HALL, Judge.
Plaintiff appeals from a judgment awarding him damages of $1,750 for pain and suffering, $750 for medical expenses, and $75 for property damage, arising out of a highway accident. The only issue on appeal is quantum.
The trial court held:
“The Court is of the opinion, however, that the striking or collision was very slight. The testimony indicated that the driver of the Mayfield vehicle was not sure that an actual striking had taken place. The Court has the complicated structure of a plaintiff with pre-existing physical and mental difficulties and a subsequent accident superimposed on any injuries that might have been sustained in the accident in question. The Court, taking into consideration all of these factors as well as that testimony which was believable and probative to the Court, awards the sum of $1,750.00 to the plaintiff for the pain and suffering which he sustained. The Court also had to make a determination as to what were reasonable and provable medical damages. The sum of $750.00 should be sufficient for those amounts. Plaintiff also claimed damages to the vehicle which was owned by the plaintiff. The Court feels that $75.00 is a reasonable and provable amount for the damages to the truck.”
On the morning of August 7, 1975, while plaintiff was riding as a passenger in a pickup truck owned by him, the truck was hit from the rear by defendant’s truck. The impact was slight and caused only minor damage to plaintiff’s truck. Plaintiff did not complain of injury at the scene of the accident.
Some three hours later plaintiff became nauseous, developed a headache and pain in the cervical area. He went to Dr. Carson Reed, an orthopedic specialist in Shreveport, who made a diagnosis of possible cervical sprain, prescribed Emperin and heat application, and sent plaintiff home. Later in the day, plaintiff went to Dr. Donald Taylor, a general practitioner in Mansfield. Dr. Taylor had plaintiff admitted to the Mansfield Hospital and diagnosed plaintiff’s *1108 injury as a cervical sprain. The doctor found muscle spasm and tenderness in the neck area. Plaintiff was treated with medication, heat and a cervical collar. After several days, Dr. Taylor was unable to account for plaintiff’s continued complaints of pain and referred him to.Drs. Dean and McAllister, orthopedic specialists in Shreveport. Dr. Dean had plaintiff admitted to Schumpert Hospital. His diagnosis was possible cervical sprain. He observed no muscle spasm or neurological changes. He noted that X-ray examination revealed no other abnormalities.
Dr. Dean called in Dr. L. C. Megison, a neurosurgeon, for consultation. Dr. Megi-son reported that plaintiff held his neck stiffly and had tenderness and spasm in the neck area. He diagnosed plaintiff’s condition as cervical musculoligamentous strain. Dr. E. H. Leatherman, a psychiatrist, was also called in. Dr. Leatherman determined that plaintiff was experiencing a significant emotional problem apparently of rather long-term duration, aggravated by his recent accident. He recommended further psychiatric workup. At this point plaintiff said his neck stopped hurting during a therapy session and asked to go home. He was discharged by Dr. Dean on August 19,1975.
A few days later plaintiff went back to see Dr. Taylor with continued complaints. Dr. Taylor saw plaintiff on subsequent occasions until December 4, 1975. His opinion, expressed at the trial, was that plaintiff had a cervical sprain and a conversion reaction.
Plaintiff went back to Dr. Dean on October 8. Dr. Dean found no physical basis for the continued pain.
Plaintiff’s attorney sent him to Dr. Baer I. Rambach, an orthopedic specialist in Shreveport, who first saw plaintiff on October 13,1975. Dr. Rambach diagnosed plaintiff’s condition as acute cervical sprain. He prescribed heat application, massage and a muscle relaxant and saw plaintiff again on November 22 and December 20. Plaintiff appeared to be progressing well and nearing recovery.
On January 8, 1976, plaintiff was involved in another accident, involving a rather severe impact. He was seen by Dr. Taylor in the emergency room of DeSoto General Hospital that evening. He went back to Dr. Rambach on February 22 with complaints of increased pain in the neck and additional complaints. Dr. Rambach continued to treat him and on April 30, referred him to Dr. W. P. Osborne, a dolo-rologist or pain specialist. Dr. Osborne saw plaintiff on several occasions, treating him with antidepressant tranquilizer therapy, hormone injections and a transcutaneous nerve stimulation unit. Plaintiff was also seen by Dr. Andrew J. Mullen, a psychiatrist, who was of the opinion that the psychiatric symptoms were functional in nature and not of organic origin and that additional stress such as this accident would aggravate his somewhat unstable personality-
At the time of trial in February, 1977, plaintiff had not seen a doctor since December 3, 1976. He complained of only minor and occasional headaches and neck pain.
The complicating feature of this case is the forty-one-year-old plaintiff’s background of severe mental and emotional problems, dating back almost twenty years. In 1973, his employment as a heavy duty diesel mechanic was terminated under total disability related to his mental instability and to a physical injury he had received to the cervical area. He has been in mental institutions on several occasions, the last being in 1964, and has not worked since 1973. There is no evidence he was having any problems from his previous physical injury at the time of the accident. There is evidence he had difficulty in coping with the problems of his everyday life. When asked what he did, plaintiff said he just tried to live with himself.
Defendant argues that plaintiff at most received a mild whiplash injury from which he should have recovered in a brief period of time with minimal medical expenses. Plaintiff argues that a tort-feasor must take a victim as he finds him, that plaintiff’s pain, suffering and disability were *1109 real and caused by the accident, and that plaintiff’s injury should be classified as a severe whiplash calling for a substantially increased award.
All of the doctors diagnosed a cervical sprain caused by the accident. The trial court recognized this in making an award of $1,750 for pain and suffering and $750 for medical expense. Undoubtedly, plaintiff’s reaction to the accident and injury was greater than that of the average person because of his mental and emotional condition. It is important to note, however, that no doctor testified plaintiff’s pain was not real or that he was malingering. Drs. Taylor and Rambach treated him through the end of 1975 for a real injury, complicated and drawn out beyond the usual and expected course by plaintiff’s preexisting situation.
Plaintiff had improved considerably prior to the second accident. It would be too speculative to relate his complaints after the second accident to the first accident.
We have, therefore, a case of a mentally unstable person who received a whiplash injury, was treated for it by competent doctors over a period of five months, spent thirteen days in the hospital, and suffered pain and discomfort which became only occasional after the first several weeks.
We conclude that plaintiff is entitled to recover his ■ actual medical expenses from the time of the accident until his last visit to Dr. Rambach prior to the second accident, in the amount of $2,264.65. We further conclude that the award for pain and suffering is so low as to amount to an abuse of discretion and should be increased to the least amount in the range of discretion, which we fix at $3,500.
As to the award for damages to plaintiff’s truck, the evidence does not establish damage beyond that awarded by the trial court.
The judgment of the district court is amended to award plaintiff a total of $5,839.65, and as amended is affirmed, at appellee’s costs.
Amended, and as amended, affirmed.